THE STATE OF NEBRASKA, EX REL. EBEN H. TUCKER, v. ESEK SANFORD.

Release of exempt property from attachment. Exempt property held by a constable under an order of attachment, issued by a justice of the peace, cannot be released under sections 522 and 523 of the code, but may be by order of the justice.

ORIGINAL application for mandamus.

*Bush & Rickards*, and *Hale & Bibb*, for the relator.

*A. Hardy*, for the respondent.

LAKE, CH. J.

This is an original application for a peremptory writ of mandamus to compel the defendant as constable to call appraisers, and have the relator's exemption of personal property in lieu of a homestead ascertained, under sections 521, 522, 523 of the code. This is desired with a view of thereby releasing certain of the property from an order of attachment under which the officer seized and still holds it. From the view we take of the case but a single question need be considered, and that is simply whether these sections apply where property is so held. They are as follows:

Sec. 521. All heads of families who have neither lands, town lots, or houses subject to exemption as a homestead under the laws of this state, shall have exempt from forced sale on execution the sum of five hundred dollars in personal property.

Sec. 522. Any person-desiring to avail himself of the exemption, as provided in the preceding section, must file an inventory, under oath, in .the court where the judgment is obtained, or with the officer holding the execution, of the whole of the personal property owned by him or them, at any time before the sale of the property; and it shall be the duty of the officer to whom the execution is directed, to call to his assistance three disinterested freeholders of the county where the property may be, who, after being duly sworn by said officer, shall appraise said property at its cash value.

Sec. 523. Upon such inventory and appraisal being completed, the defendant in execution, or his authorized agent, may select from such inventory an amount of such property, not exceeding, according to such appraisal, the amount or value herein exempted, but if neither such defendant, nor his agent, shall appear and make such selection, the officer shall make the same for him.

Now can it reasonably be said of this language that it is susceptible of a construction which will make the steps provided for in the last two sections applicable where property of a debtor is held under an order of attachment? That property which is exempt from forced sale on execution is not attachable, is unquestionably true; but how is its exempt character to be established? Could it have been the design of the legislature, where a debtor's property is attached, and the court, in the language of the statute, has thereby "acquired jurisdiction" over it, that upon a mere ex parte affidavit and valuation, his right to an exemption out of it and its extent may be definitely settled? We think not. The language of the statute

evinces no such intention, and besides, such a rule would be entirely unreasonable and hostile to all of the analogies of the law.

To us the idea very clearly expressed by this language is, that the proceeding sought by the relator was intended to be given only where property of a defendant is seized, after judgment, under an ordinary execution. The first step to be taken is the filing of an inventory by the debtor of all his personal property "in the court where the judgment is obtained, or with the officer holding the execution." But in the case of the relator this could not have been done, for the very good reason that no judgment had yet been rendered, nor execution issued. The action had just been commenced, the property of the debtor seized and brought within the control, not of a mere ministerial officer, but of a court possessing jurisdiction to judge all rights respecting it; and surely the law is not so unreasonable as to require that same property to be released through a mere *ex parte* proceeding before a constable.

When a constable under an order of attachment seizes property of the defendant, he is required to " hold it subject to the order of the justice." Sec. 929, code of civil procedure. If, because it is exempt from forced sale in payment of debts, its release be desired, it may be had through an order of the justice to that effect. We are of opinion that the writ should be denied.

WRIT DENIED.

MAXWELL, J., dissenting.

I concur in the opinion of the majority of the court, so far as it is held that the justice may discharge the property attached, but I cannot give my assent to that portion of the opinion which holds that that remedy and replevin are exclusive.

The articles levied upon in this case, are the following:

Boxes of household goods, consisting of beds, bedding, pictures and wearing apparel.

1 chest containing dishes and wearing apparel.

1 extension table.

1 bdl chairs.

1 heating stove.

1 bundle of stove pipe and loose joints.

1 bundle of elbows.

1 wash stand.

1 cook stove.

1 R. chair and stand attached.

1 sewing machine.

1 table.

1 desk.

1 box or chest of carpenter tools.

The case is submitted to the court upon the following statement of facts:

It is hereby stipulated and agreed by the parties hereto:

1. That the plaintiff, Tucker, is the head of a family residing with the same.

2. That he has resided in Gage county, Nebraska, for three years, prior to January 1st, 1882.

3. That on January 1st, 1882, he went into the state of Missouri, engaged in business there as foreman of a gang of carpenters on a railroad, for which he was to be paid a monthly salary, and with intention of removing there, and on the 10th day of January, A. D. 1882, he caused the goods now held under an order of attachment, to be boxed up, loaded upon the cars, and attempted to ship them to his wife's brother at Kansas City, in the state of Missouri, where he intended to live and reside. That on said 10th day of January, 1882, one O. O. Wells, sued out a writ of attachment, grounded upon the allegation that the said Tucker was about to remove his property, or a part thereof, out of the county of Gage, in the state of Nebraska, with intent to defraud his creditors.

And the defendant, Esek Sanford, constable, served the same by attaching the goods. That said attachment suit was set for hearing, on motion of Tucker to dissolve the same, before Peter Shafer, a justice of the peace, in and for Gage county, and on the hearing of said motion by Tucker, filed before said justice, to dissolve said attachment, because of alleged irregularities in obtaining the same, and because of an allegation in said motion that said property was exempt, and that the affidavit for attachment was untrue, which said allegations were supported by affidavits, and an inventory under oath was also filed with said motion, covering all the property belonging to the said Tucker. Said motion was opposed by counter affidavits, and the said justice dissolved said attachment, to which Wells excepted. Thereupon said justice fixed the time for Wells to file petition in error at ten days, and thereupon Wells filed his undertaking for the purpose of reversing said order dissolving said attachment in the district court, as provided for by sec. 236 e, page 561, of Compiled Statutes, which undertaking was duly approved by said justice of the peace, and said justice ordered said Sanford to retain said property in custody and not part with the possession of the same. That on the 23rd day of January, 1882, Tucker filed with Sanford, the defendant herein, an inventory of said property under oath, which is hereto attached, marked "A," and Sanford refused and still refuses to act, as provided by sec. 522, page 599, of the Compiled Statutes of Nebraska; that said property and all the property owned by the said Tucker, does not exceed in value the sum of $500.00, and that he, the said Tucker, has neither lands, town lots, or houses, subject to exemption as a homestead under the laws of this, or any other state; that said claim is for services as a physician and for medicine, and further, that the wife of the plaintiff, Tucker, was about to depart from this state when said goods were attached,.

and has since departed and gone to the state of Missouri to live with her husband there.

Section 530 of the code provides that: "No property hereinafter mentioned shall be liable to attachment, execution, or sale, on any final process issued from any court in this state, against any person being a resident of this state and the head of a family. *First.* The family bible. *Second.* Family pictures, school books and library for the use of the family. *Third.* A seat or pew in any house or place of public worship. *Fourth.* A lot in any burial ground. *Fifth.* All necessary wearing apparel of the debtor and his family. All beds, bedsteads and bedding necessary for the use of such family. All stoves and appendages put up or kept for the use of the debtor and his family, not to exceed four. All cooking utensils, and all other household furniture not herein enumerated, to be selected by the debtor, not exceeding in value one hundred dollars. *Sixth.* One cow, three hogs, and all pigs under six months old, and if the debtor be at the time actually engaged in the business of agriculture, in addition to the above, one yoke of oxen, or a pair of horses in lieu thereof; ten sheep, and the wool therefrom either in the raw material or manufactured into yarn or cloth; the necessary food for the stock mentioned in this section, for the period of three months; one wagon, cart or dray, two plows and one drag; the necessary gearing for the team herein exempted; and other farming implements not exceeding fifty dollars in value. *Seventh.* The provisions for the debtor and his family necessary for six months support, either provided or growing, or both, and fuel necessary for six months. *Eighth.* The tools and instruments of any mechanic, minor or other person, used and kept for the purpose of carrying on his trade, or business. The library and implements of any professional man. All of which articles hereinbefore intended to be exempt shall be chosen by the debtor, his

agent, clerk or legal representative, as the case may be."

The section above quoted was passed by the legislature at the 1859–60 session, and, so far as I am aware, no attempt has been made to change it since that time. At the time of the passage of the act, no mode of procedure was provided therein; but in 1866, provision was made for filing an inventory, under oath, setting forth the whole of the property owned by the debtor, in cases where the $500.00 exemption in lieu of a homestead was claimed. This mode of procedure being that given by statute, and being simple and inexpensive, has, I believe, generally prevailed in this state, not only in cases where the $500.00 exemption in lieu of a homestead was claimed, but in all other cases where property was claimed as exempt, whether levied upon by execution or attachment. And, in the case of *The State v. Cunningham,* 6 Neb., 90, this procedure was approved by this court, and the sheriff compelled by mandamus to call appraisers to appraise property claimed as exempt, which was levied upon under an order of attachment.

Since that decision was made, section 182 of the code has been amended so as to permit an action of replevin to be brought to recover the possession of exempt property, levied upon under an execution or attachment. The remedy by replevin, however, is in many cases unavailing from the inability of the debtor to give the requisite security. But the remedy by replevin, or by a dissolution of the attachment, is not, in the opinion of the writer, the only one to which the debtor is entitled. The object of the law is to throw a shield around the poor; to protect them in the possession of the necessary wearing apparel, the necessary beds, bedding and furniture; the necessary food for a limited period for the family, and such stock as is exempt; the necessary tools or implements, to enable the debtor to prosecute his particular business or profession.

Now, suppose, that any or all of the articles specifically exempted, are levied upon under an attachment, the court from which the attachment is issued is absolutely unable to grant the needed relief. The court may dissolve the attachment, and order a return of the attached property, but the creditor may file an undertaking and take the case on error to the appellate court, and thus for six months or a year prevent the return of property that was not liable to attachment. In the case at bar, the justice ordered the discharge of the attachment, but the creditor filed an undertaking, and still holds the property.

A remedy to be adequate must afford speedy relief—that is, a speedy restoration of the exempt property. If this is denied, it is in the power of an unfeeling and unscrupulous creditor to cause an attachment to be levied upon every article of exempt property, including all the wearing apparel of the debtor and his family not actually on their persons, and cause such property to be retained, notwithstanding the orders of the several courts to which the case has been appealed, discharging the attached property, until the final order of this court declaring the property exempt. It is in the power of such creditor to invade the household with an attachment and strip it of every article of comfort, utility or convenience, of every particle of food, and leave nothing but the bare walls of the building, while the debtor without means, with his family reduced to beggary, must contest his rights through the several courts, before he can have a return of the property which the law declares shall not be liable for his debts. Such a remedy is but little better than none in such case. A prompt and efficient remedy is afforded by mandamus to compel a public officer to perform his duty, and if questions of fact arise they can be as readily determined in that case as in any other.

In the case at bar, the creditor seems to have made an

affidavit that the debtor was about to remove his goods from the state for the purpose of defrauding his creditors. The property is shown beyond question to be exempt. This court held in *Derby v. Weyrick*, 8 Neb., 174, that property which is exempt by law from liability for the owner's debts, is not susceptible of a fraudulent alienation. The owner may sell such property at his pleasure, and it is no fraud upon his creditors, because the exemption law was notice to them that the property was not subject to their demands. And the property being exempt while the owner was a resident of the state, does not lose its character while in transition from here to the state of Missouri. *Anthony v. Wade*, 1 Bush, 110. A mandamus should be granted and the property released.